UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALGENARD DION COWART,

              Plaintiff,

v.

UNKNOWN VERVILLE and
UNKNOWN PARTIES,

              Defendants.

_____/

Case No. 1:21-cv-733

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Algenard Dion Cowart ("Cowart"), a prisoner in the custody of the Michigan Department of Corrections (MDOC), filed this civil rights lawsuit against defendant Corrections Officer (CO) Christopher Verville (named as "Unknown Verville") and two other COs which plaintiff lists as unknown parties. *See* Compl. (ECF No. 1). This matter is now before the Court on CO Verville's motion for summary judgment (ECF No. 20). Plaintiff did not oppose defendant's motion.[1]

### I.      Plaintiff's complaint

Plaintiff is currently incarcerated at the Marquette Branch Prison (MBP). However, the alleged incident occurred at the Oaks Correctional Facility (ECF) in August 2018. Plaintiff set forth the following allegations in a verified complaint.

---

[1] "Unless otherwise ordered, any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." W.D. Mich. LCivR 7.2(c).

While plaintiff was incarcerated at ECF, non-party CO Turner taunted plaintiff with "verbal abuse publicly" and "constantly shook down his cell."   Compl. at PageID.2.   On August 23, 2018, Turner instructed plaintiff to wait in the dayroom of the unit so that he could harass plaintiff by shaking down his cell.   While plaintiff waited for Turner to complete the shakedown, defendant CO Verville and two other officers entered the dayroom "where the Plaintiff patiently waited for instructions to return to his cell."   *Id*.   Non-party Turner taunted plaintiff by "waiving his cuffs" and stated that "he should send the Plaintiff to the hole 'just because' and make up a reason later."   *Id*.   When plaintiff questioned Turner as to why he continues to harass him, Turner stated "Don't back talk me, boy!".   *Id*. at PageID.3.

> The Plaintiff replied: "Boy! What does boy suppose to mean? . . . Why the fuck is you disrespecting me for?!"   The Plaintiff then looked at Defendants and stated: "And y'all just gone fucking stand there and not say shit about this muthafucker harassing me, are y'all serious?!"

*Id*.

CO Turner became enraged, yelled "Who the fuck are you getting loud with" and charged at plaintiff.   *Id*.   Plaintiff responded by yanking his arm away from CO Turner as a natural reflex.   *Id*.   As plaintiff kept his hands up in the air "in a surrendering fashion," the unknown two officers aimed their tasers at plaintiff.   *Id*.   Plaintiff then pleaded with the two officers and said "I give, I give.   I aint [sic] even do shit [sic]."   *Id*.   One of the two unknown officers said, "Here, sense [sic] you wanna run your fucking mouth! [sic]" and then both officers fired their tasers and hit plaintiff in the lower leg area.   *Id*.

While plaintiff was "still somewhat standing but slowly going down," defendant Verville drew his laser-equipped taser, aimed it at plaintiff's "face/neck area" and stated, "Have a blast!".   *Id*.   The taser's prongs hit plaintiff's face and neck, which caused him "to fall face-first

2

into a steel table and onto the ground splitting his forehead wide open to where [plaintiff] had to receive medical attention and received stiches/staples [sic] to close the gaping wound." *Id*. Since receiving this injury, plaintiff has experienced migraine headaches when he previously did not suffer headaches. *Id*. at PageID.4. Plaintiff is a skilled painter who now has a hard time focusing on his craft due to the injury he sustained from CO Verville's excessive force. *Id*.

In summary, plaintiff alleged that defendants violated his Eighth Amendment rights when they used excessive force against him "for no justifiable reason when the Plaintiff had already surrendered well before the need for the Defendants to draw their tasers on him." *Id*. at PageID.4-5. Plaintiff seeks compensatory and punitive damages. *Id*.

## II.    Defendant's motion for summary judgment

### A.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

3

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.    Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).    As discussed, plaintiff filed a verified complaint, which has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment.  *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).    However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, plaintiff did not oppose the motion as required under W.D. Mich. LCivR 7.2(c).   "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."   *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports

an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.   *Id*. at 405.

### B.   Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."   *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.   *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff alleged that CO Verville used excessive force in violation of the Eighth Amendment when he intentionally assaulted plaintiff with a taser. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*.

Plaintiff's claim that CO Verville used excessive force is analyzed giving deference to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. "Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*,

5

468 U.S. 517, 526 (1984). A prison's internal security is a matter normally left to the discretion of prison administrators. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Accordingly, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 321-22 (internal quotation marks omitted).

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). *See also Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010) (applying *Whitley*). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321).

Here, it is undisputed that plaintiff hit CO Turner on August 23, 2018; he pled guilty to assault and battery on a staff victim. *See* Misconduct Hearing Report (ECF No. 21-3). The issue in this lawsuit whether CO Verville used excessive force to stop plaintiff's assault of CO Turner. To place CO Verville's actions in context, the Court will review the incident which gave rise to the alleged use of excessive force.

CO Verville set out the following facts in his misconduct report filed against plaintiff:

At the above date and time prisoner Cowart #429602 became very loud and argumentative with C/O Turner because he thought staff was searching his cell. C/O [T]urner attempted to reason with Cowart but he continued to get loud and aggressive at which time he told Cowart to turn around to be handcuffed. Cowart said, "If you want me come in here and get me."   At this point Arus Weaver, C/O Blow, C/O Bladzik and myself stepped into the dayroom with officer Turner as a show of force while Arus Weaver tried to reason with Cowart.   Cowart then said, "Fuck this lets go!" and then struck C/O Turner multiple times with closed fists in the head and neck area. I then deployed my ECD and Cowart was taken to the ground by Arus Weaver and secured by myself, Arus Weaver and C/O Bladzik. Cowart was then taken to seg without further incident. Cowart was identified by his MDOC id card and the housing unit master count boards.

Verville Misconduct Report (ECF No. 21-3, PageID.85).

The hearing officer summarized plaintiff's version of events at the hearing:

Prisoner present. Misconduct report and evidence read and reviewed with prisoner. Pleads guilty. No hearing investigation was requested. Evidence consists of one page from officer Bladzik; one page from officer Blow; one page from officer Turner; one page from officer Verville; one page from ARUS Weaver; nine pages of photographs (the one of staff held confidential); one page from the investigator that indicates the prisoner did not wish to have any investigation; two pages of mental health screening; the surveillance video of the incident, held confidential to prevent release of fixed camera locations, limitations and capabilities. The contents are generally summarized for the prisoner.   The prisoner indicates that he got stitches in his head because it was busted open. He states that he tried to reason with them.   He states that he kept asking why he was gonna be taken to the hole.   He states that they had three tasers pointed at him.   He states that when they crowded around him, he struck out. He admits that he struck the office. He had nothing further.

Misconduct Hearing Report (ECF No. 21-3, PageID.84).

The hearing officer made findings which contradicted plaintiff's version of events:

Per PD 03.03.105, assault and battery is an intentional, nonconsensual touching of another person done either in anger or with the purpose of abusing or injuring another.   Hearing officer finds the statement of the reporting staff member to be reliable, specific and supported by the prisoner's own admission. HO finds that the charged prisoner did intentionally and in anger strike officer Turner in the right eye. The contact was non-consensual and was not mutual. The contact caused a swollen and bruised right eye, as shown by the photograph. This was also witnessed by officers Bladzik, Blow, officer Verville, and ARUS Weaver. The

video shows the prisoner go into the dayroom and get followed by the staff members involved.  ARUS Weaver appears to be talking to the prisoner. The prisoner then takes off his glasses, puts them on the table and lunges toward officer Turner, striking him in the right eye. The prisoner admits that this is accurate and admits that he struck the officer in the eye. His guilty plea is accepted to (008) [Charge 008 Assault and battery (staff victim)].

*Id.*[2]

In support of his motion for summary judgment, CO Verville filed an affidavit which set out a more detailed chronology of events:

4. On or about August 23, 2018, I was performing my duties as a Corrections Officer (CO) at ECF by assisting officers with a prisoner escort to segregation in Housing Unit 2.

5. When I stepped into Housing Unit 2, I could immediately hear Prisoner Cowart being very loud and argumentative with staff in the dayroom.

6. When I entered the dayroom, Assistant Resident Unit Supervisor (ARUS) Weaver and CO Turner were already in the dayroom with Cowart, and ARUS Weaver was attempting to explain the situation to Cowart and calm him down.

7. Then, I observed Cowart say, "let's go," take off his glasses, strike CO Turner multiple times in the head and neck with closed fists.

8. I pulled out my taser when Cowart started taking off his glasses and discharged both taser cartridges when he started assaulting CO Turner.

9. An assault on a staff member is a dangerous situation that should be stopped as soon as possible as it poses a risk to the staff members and can stir up other prisoners.

10. Believing that it would be the fastest way to end the assault and fearing for my, Turner's, other staff members' safety I drew and deployed my taser.

11. Cowart moved fast enough to get past several staff members when he struck CO Turner in the face, and it was my perception that he would [sic] injury more staff had I not utilized my taser.

---

[2] A photo of the officer's injury appears at ECF No. 21-8, PageID.99.

12. As Cowart continued to attack CO Turner, there was a struggle between Cowart and CO Turner. Everyone in the area was moving around and I did not have a clear shot at Cowart specifically.

13. Stopping Cowart's assault on CO Turner was of pinnacle importance to prevent further injury to CO Turner and enable ECF staff to render necessary medical aid.

14. The prongs struck Cowart in the thigh and hip as well as the face and neck, and Cowart ceased his assault on CO Turner immediately.

15. ARUS Weaver took control of Cowart and I assisted in securing Cowart when he was on the ground.

16. I then assisted the yard staff with escorting Cowart to segregation.

17. I did not have any intention to strike Cowart in the head and neck, however, I was in close proximity to Cowart and reacted quickly after I observed Cowart attack CO Turner.

18. Force was used only to the extent I believed necessary to enforce MDOC policies and maintain order and control within the facility, in defense of others, and defense of self.

Verville Aff. (ECF No. 21-4, PageID.105-107).

The entire incident appears in surveillance video (ECF Nos. 21-2 and 22). The video depicts the events as described by CO Verville and the hearing officer. At 9:34:32 a.m. there are four corrections officers and another MDOC employee in the dayroom near a prisoner (identified as plaintiff). The MDOC employee (identified as ARUS Weaver) appears to be talking to plaintiff. At 9:34:33 a.m. plaintiff takes off his glasses and sets them on a table. At 9:34:36 a.m. plaintiff lunges toward a corrections officer (identified as CO Turner) and strikes him. At 9:34:38 a.m. defendant CO Verville is holding a taser. At that time, plaintiff appears to be hit by the taser, starts to fall, and is held by ARUS Weaver. By 9:34:41 plaintiff appears to be on the ground held down by ARUS Weaver and a corrections officer.

Contrary to plaintiff's claims, the video depicts that one corrections officer, CO Verville, tasered plaintiff when he attacked CO Turner.   The video does not depict plaintiff's allegations: that CO Turner charged at plaintiff; that two corrections officers tased plaintiff before CO Verville discharged his taser; or that plaintiff was surrendering when CO Verville discharged his taser.   The entire incident, from the time that plaintiff took off his glasses until the MDOC personnel secured plaintiff on the ground, lasted less than ten seconds.   Plaintiff's version of events is blatantly contradicted by the video evidence. No reasonable jury would believe plaintiff's version of events, which among other things, portrayed him as a victim of multiple taser projectiles who was surrendering when CO Verville tasered him again.   Accordingly, this Court does not adopt plaintiff's version of the facts for purposes of ruling on the motion for summary judgment. *See Scott*, 550 U.S. at 380.

Based on this record, there is no evidence to support plaintiff's claim that defendants used excessive force against him "for no justifiable reason" because he "had already surrendered well before the need for the Defendants to draw their tasers on him."   The record reflects that CO Verville applied force in a good-faith effort to maintain or restore discipline, *i.e.*, to prevent plaintiff from inflicting further injury on CO Turner.   Accordingly, the Court should grant CO Verville's motion for summary judgment.

### III.    Unknown parties

Plaintiff has not identified the two unknown parties.   In *Haddad v. Fromson*, 154 F. Supp. 2d 1085 (W.D. Mich. 2001), this Court addressed the use of unnamed or "Doe" defendants and explained that such defendants should be dismissed if the plaintiff fails to identify the defendants during discovery:

With regard to the unnamed Defendants, discovery is now closed, and Plaintiff has failed to amend his Complaint to identify these Defendants by name. In general, the use of unnamed defendants is not favored in the federal courts. *See Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 (5th Cir.1993). The mere naming of a person by use of a fictitious title does not make that person a party to a lawsuit, and it does not prevent the entry of final judgment.  *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir.1987). The appropriate treatment of Doe defendants is to delay taking action with regard to them until plaintiff has had an adequate time in discovery to identify them by name. Plaintiff has had that opportunity, but he has failed to properly identify the unnamed Defendants. Those Defendants will therefore be dismissed without prejudice.

*Haddad*, 154 F. Supp. 2d at 1093.   As in *Haddad*, discovery is closed, and plaintiff has failed to identify or serve the two unknown parties.   Accordingly, the two unknown parties should be dismissed.

## IV.    Recommendation

Accordingly, I respectfully recommend that defendant Verville's motion for summary judgment (ECF No. 20) be **GRANTED**, that the two unknown defendants be **DISMISSED**, and that this case be terminated.

Dated:   August 3, 2023                                /s/ Ray Kent
                                                                RAY KENT
                                                                United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).